UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
    Jeffery Watson Potter,
    Debtor.                               No. 11-05-14071 MS

Los Alamos National Bank,
    Plaintiff,

v.                                                                 Adv. No. 05-1149 M

Jeffery W. Potter, the Legal Defense and Maintenance
Trust of California Dated 8/25/03, Mariana Danilovic,
Trustee, and Martin S. Friedlander,
    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Martin S. Friedlander's Motion for Judgment on the Pleadings Pursuant to FRCP 12(c) Against LANB and/or Motion for Summary Judgment Against LANB Pursuant to FRCP Rule 56 (the "Motion") (Doc. 53). LANB filed a Response in Opposition to Martin S. Friedlander's Motion for Judgment on the Pleadings and/or for Summary Judgment Against LANB and Cross Motion for Summary Judgment (the "Response" or the "Cross-Motion") (Doc. 70).[1] Having determined that there are no issues of material fact

---

[1] Both the Motion and the Cross Motion ask the Court to consider matters outside of the pleadings; therefore, the Court will treat both as motions for summary judgment. *See Carter v. Daniels*, 91 Fed. App. 83, 86 (10th Cir. 2004) ("If the court considers matters outside of the complaint, it should treat the motion as a motion for summary judgment, and not as a motion to dismiss.")(citation omitted); *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) (finding that conversion from 12(b)(6) to summary judgment required no notice and extra time to respond because both parties submitted extraneous material).
    Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056(c). The moving party bears the burden of proving that

1

Case 05-01149-s    Doc 83    Filed 08/09/06    Entered 08/09/06 10:43:20 Page 1 of 8

as to each count of LANB's Complaint and that LANB is entitled to judgment as a matter of law, the Court will grant LANB's Cross Motion and will deny Friedlander's Motion. Neither the Motion nor the Cross Motion addresses Friedlander's counter-claims asserted in his Answer (Doc. No. 37).[2] In granting the Cross Motion, the Court makes the following findings of fact and conclusions of law:

Undisputed Facts

1. Defendant, Jeffrey W. Potter ("Potter") filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 19, 2005. Defendant, Martin S. Friedlander ("Friedlander") is an attorney who has represented Potter and entities created by Potter in certain legal matters. Friedlander filed a proof of claim (Claim No. 15) for a secured claim in the amount of $236,000.00 for unpaid legal fees. Plaintiff Los Alamos National Bank ("LANB") is a creditor in this bankruptcy proceeding and filed this Complaint July 7, 2005 objecting to Friedlander's secured claim and asserting a priority in certain monies held in escrow.

2. On or about August 25, 2003 Potter established The Legal Defense and Maintenance Trust of California (the "Trust") and transferred all of his property, including his interest in real property in Santa Fe, New Mexico known as the Galisteo property (the "Property") to the Trust.

---

there are no genuine issues of material fact that would preclude summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party. *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996).

[2] Friedlander asserts counterclaims for fraud, and for breach of the implied covenant of good faith and fair dealing. Friedlander asks for compensatory damages as well as rescission of all of the loan documents.

2

Resp. Ex. 8.[3]

3. In December 2003 the Property was sold. The Sellers of the Property were the Trust and Kitty Miller each owning an undivided one-half interest in the Property. Escrow Agreement (Resp. Ex. 8). According to the Escrow Agreement, the proceeds of the sale were distributed to pay taxes, certain assessments, another lien holder (Bank of America), and to LANB in partial payment of a previous loan. One-half of the remaining proceeds were distributed to Kitty Miller, and the other half of the proceeds, labeled the "Potter Proceeds," were placed in escrow. Ex. 8 p. 2 ¶ B. The Escrow Agreement recites that after payment of $15,000.00 to Friedlander and $49,063.99 to the IRS, the Potter Proceeds remaining in the escrow account equaled $76,336.05 (the "Funds"). Resp. Ex. 8 p. 2 ¶ B.

4. In December 2003, as part of the restructuring of his debt to LANB, Potter executed a Loan Workout Agreement with LANB, a new promissory note (the "Note") for $82,200.46 in favor of LANB and a Security Agreement. The Security Agreement granted LANB a lien on two sets of collateral: 1) the Funds and 2) the proceeds of several lawsuits in which Potter was a party (hereinafter, the "Litigation"). Security Agreement Resp. Ex. 5. To perfect its interest in the Funds, LANB filed a UCC1 Financing Statement with the New Mexico Secretary of State's office on December 19, 2003. Resp. Ex. 6.

5. The Escrow Agreement executed by LANB, Potter, the Trust, French & French Fine Properties, Inc., Kitty Miller, Summit Investment Co., LLC and Rio Grande Title Company states the following with respect to the Funds:

---

[3] Friedlander, as Potter's attorney, drafted the Trust document and is currently the trustee of the Trust.

> Any and all remaining proceeds (in the approximate amount of $76,336.05) shall be placed in escrow held for the benefit of all lien holders subject to the liens of Los Alamos National Bank pursuant to its mortgage as modified and French & French pursuant to the Transcript of Judgment with said liens attaching with the same priority and effect as the liens attach to the Property as of the date of closing. The escrowed monies shall be distributed in accordance with the following instructions:
> a. **If the [French & French] judgment is reversed, with no money due to French & French, upon a final judicial opinion, Los Alamos National Bank receive the full amount of escrowed funds to satisfy any outstanding amounts due to Los Alamos National Bank with any remainder of funds to the Legal Defense and Maintenance Trust of California dated 8/25/03 (the "Trust");** . . . . Resp. Ex. 8 at p. 2 ¶ B.4.a. (emphasis added).

6. Friedlander signed the Escrow Agreement as attorney for the trustee of the Trust, Potter, and Summit Investment Co., LLC. Resp. Ex. 8 at p. 4.

7. The judgment in favor of French & French was reversed by the New Mexico Court of Appeals. Friedlander's Answer (Doc. No. 37) ¶ 18.

## Discussion

In its Cross Motion LANB claims that the French & French judgment has been reversed and pursuant to the Escrow Agreement, Security Agreement and UCC1 Financing Statement, LANB has a first lien on the Funds and a right to immediate disbursal of the Funds. In the Motion Friedlander asserts that he has a superior lien on the Funds for unpaid attorney's fees incurred in representing both the Trust and Potter in several legal matters, including the sale of the Property. Friedlander asserts a contract lien on the Funds pursuant to two retainer agreements governing his representation of the Trust and Potter. *See* Trust Retainer Agreement. (Friedlander Proof of Claim No. 15 Ex. B) (the "Trust Retainer Agreement") and Attorney-Client Retainer Agreement (Friedlander Proof of Claim No. 15 Ex. A) (the "Potter Retainer Agreement"). In the alternative, Friedlander asserts an equitable lien on the Funds for the reasonable value of legal services in representing the Trust and Potter in connection with the sale

4

of the Property. Friedlander's Answer ¶¶ 18-19.

First, Friedlander asserts that he should be granted summary judgment because the Loan Workout Agreement provides that he has an attorney's lien on all of the assets superior to LANB. Second, Friedlander argues that LANB's security interest is a "mirror image" of Friedlander's security grant. Motion p. 1. LANB admits that the Loan Workout Agreement and the Security Agreement state that "the attorney's lien is superior" to LANB's lien. Security Agreement Resp. Ex. 5 at p.2 ¶ 3A; Loan Workout Agreement at p. 2 ¶ 2A. However, LANB argues that this statement neither grants a lien to Friedlander nor admits to the validity or priority of any lien asserted by Friedlander in the Funds. LANB asserts that this statement was merely a recognition of the priority of any attorney's lien that is enforceable against the proceeds of the Litigation. As discussed infra, the liens granted in the Security Agreement and in the retainer agreements do not mirror each other.

Friedlander also asserts that there is no dispute as to his secured claim of $236,000.00 because LANB filed no objection to Friedlander's proof of claim; therefore, he can assert this secured claim against the Funds. Friedlander relies on § 502 (a), which provides that a claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). In the Response, LANB correctly argues that the Complaint in this adversary proceeding sufficiently disputes the amount and the secured status of Friedlander's claim such that it cannot be deemed allowed. *See* Fed.R.Bankr.P. 3007; *In re Quantegy, Inc.*, 343 B.R. 689, 693 n.4 (Bankr.M.D.Ala.2006) (stating that Bankruptcy Code recognizes that an objection to claim may be brought by adversary proceeding). This adversary proceeding challenges the validity of Friedlander's secured claim, thus the claim cannot be deemed allowed under § 502(a). *In re Britt,* 199 B.R. 1000, 1007

5

(Bankr.N.D.Ala. 1996)(noting that a claim is deemed allowed only in the absence of an objection).

Next, Friedlander argues that the Potter Retainer Agreement, expressly governed by California law, granted him a valid and enforceable lien that is superior to LANB's lien on the Funds. "In California, an attorney's lien is created only by contract -- either by an express provision in the attorney fee contract, or by implication, where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered." *Carroll v. Interstate Brands Corp.*, 99 Cal.App.4th 1168, 1171, 121 Cal.Rptr.2d 532, 534 (Cal.App. 2002)(noting that California is different than most other jurisdictions that allow an attorney's lien by operation of law). The Potter Retainer Agreement, which is governed by California law, states Friedlander agreed to represent Potter in connection with an attorney malpractice claim and to perform all work reasonably necessary and appropriate to collect all damages resulting from such claim. Claim No. 15 Ex. A. The Potter Retainer Agreement provides the following:

> Attorney shall be paid out of all funds collected from [the attorney] or his malpractice carrier and shall have a "lien" on all settlement proceeds until paid in full.

Claim No. 15 Ex. A at p. 5. Based on the language of the Potter Retainer Agreement, Friedlander may assert a lien for unpaid legal services only on the settlement or judgment proceeds of the legal malpractice matter, and the Funds do not represent such proceeds. Therefore, Friedlander has no contract lien on the Funds pursuant to the Potter Retainer Agreement.

Friedlander argues next that the Trust Retainer Agreement provides a basis for his lien on the Funds. The Trust Retainer Agreement provides that the Trust employed Friedlander to represent the following "Client":

6

(1) Jeffrey W. Potter, (2) Summit Valdes Business Park LLC, and (3) Summit Investment Company LLC in connection with all pending civil litigation against Client.

The civil litigation involves claims against a fund held by a Receiver (the "Receivership Fund").[4] Friedlander agreed to represent the "Client" on a contingent fee basis in connection with the civil litigation involving the receiver and on an hourly basis for all matters of a defensive nature in the same pending action. The money for the hourly fees was to come from the Receivership Fund with the balance of the Receivership Fund to be paid to the Trust beneficiaries. The Trust Retainer Agreement further provides:

> Attorney shall be paid out of all funds collected and shall have a "lien" on all settlement proceeds and judgments until paid in full.

Claim No. 15 Ex. B at p. 4. This language in the Trust Retainer Agreement limits Friedlander's right to assert a lien only to those proceeds collected in connection with the receivership litigation and does not specifically grant a contractual lien on the Funds. The Court finds that this language limits Friedlander's lien claim to only those monies collected from the Receivership Action. Therefore, Friedlander has no contract lien claim to the Funds under the Trust Retainer Agreement.

Finally, Friedlander asserts he was discharged from both the legal malpractice matter and the receivership litigation due to the withdrawal of his associating local counsel; and consequently, under California law he is entitled to an equitable lien against the Funds in the amount of his fees incurred before the discharge. *See Hansen v. Jacobsen*, 186 Cal.App.3d 350, 351, 230 Cal.Rptr. 580, 581 (1986)(finding that contractual lien survives discharge of attorney

---

[4] The proceeding referenced in the Trust Retainer Agreement has been removed to this Court. *El Llano Co., Inc. et al. v. Summit Investment Co., LLC, Summit Valdes Business Park, LLC and Jeffrey W. Potter,* Adv. No. 06-1138 M.

7

but is for quantum meruit recovery). However, California law provides only that an otherwise enforceable lien continues in favor of a discharged attorney allowing recovery of fees in quantum meruit. *Id.* Because Friedlander has no contractual lien on the Funds, he also may not assert an equitable lien against the Funds as a discharged attorney.

In conclusion, neither the express provisions of the Potter and Trust Retainer Agreements nor California common law grant Friedlander a lien on the Funds.[5] The Court finds that pursuant to the express provisions of the Loan Workout Agreement, the Note, the Security Agreement, the UCC1 Financing Statement and the Escrow Agreement, LANB has a priority lien on the Funds; therefore, the Court will grant the Cross Motion. An appropriate order will be entered herewith. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

/s/ Mark B. McFeeley
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

Copies of this Memorandum Opinion to:

Martin S. Friedlander, pro se
10350 Wilshire Blvd., Suite 603
Los Angeles, CA 90024

James Jurgens
Attorney for LANB
100 La Salle Circle, Suite A
Santa Fe, NM 87505

---

[5] All other arguments made by Friedlander in support of his lien not specifically addressed herein have been considered and have been found to be without merit.

8